```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,        )
                                 )
               Plaintiff,        )
                                 )
v.                               )     Case No. CR-20-071-RAW
                                 )
DEMARCO LATREL PATTERSON,        )
                                 )
               Defendant.        )
```

## FINDINGS AND RECOMMENDATION

This matter comes before the Court on the Motion to Suppress Evidence filed by Defendant Demarco Latrel Patterson (Docket Entry #33). United States District Judge Ronald A. White who presides over this case referred the subject Motion to the undersigned for Findings and Recommendation. To that end, this Court conducted a hearing on the Motion on December 4, 2020 with Kyle Essley and Sarah McAmis appearing for the Government, Michael Abel representing Defendant and Defendant Patterson personally appearing.

On June 22, 2019, Deputy Matt Youngblood with the McIntosh County, Oklahoma Sheriff's Office was dispatched to an address in Checotah, Oklahoma concerning a possible sexual assault. At the time of his arrival, Deputy Youngblood had no knowledge that the address was located on Indian Country. Deputy Youngblood spoke with a Checotah Police Department officer and the alleged victim. He was told that the victim, a 14 year old female, met Defendant

Patterson at the local Pizza Hut and entered his vehicle. They drove down a dirt road and stopped. During the sexual encounter, the victim performed oral sex on Defendant Patterson, Defendant Patterson performed oral sex on the victim, and they engaged in sexual intercourse. Defendant Patterson then drove the victim back to the Pizza Hut and they parted.

Deputy Youngblood collected statements and some clothing. He then transported the victim to the Okmulgee Hospital for a rape kit and a forensic interview of the victim.

On July 1, 2019, Deputy Youngblood obtained information that Defendant Patterson was staying in an apartment complex. He proceeded to the apartment and encountered Defendant Patterson's girlfriend. She told the Deputy that she would get ahold of Defendant and tell him that Deputy Youngblood needed to speak with him.

On the same date, Defendant Patterson contacted the Checotah Police Department and agreed to meet Deputy Youngblood at the police department offices. Defendant Patterson arrived with his girlfriend. Although he was not placed under arrest, Deputy Youngblood read Defendant Patterson his Miranda rights and Defendant Patterson agreed to speak with him. Deputy Youngblood was attired in his Sheriff's uniform and his service weapon.

Defendant Patterson told Deputy Youngblood that the victim got into his vehicle and they drove down some dirt roads. The victim asked Defendant Patterson for a cigarette. He stated that they then engaged in the sexual acts in conformity with the victim's statement. Deputy Youngblood described the tone of the interview as "friendly" and testified that he never threatened or coerced Defendant Patterson nor raised his voice. Defendant Patterson then agreed to make a written statement which he completed. The statement was largely consistent with Defendant Patterson's oral interview statement.[1]

Deputy Youngblood stated he then spoke with his supervisor and they determined that they had enough evidence for Defendant Patterson's arrest. Deputy Youngblood went back into the interview room with Defendant Patterson and informed him that they had a search warrant for Defendant's DNA.[2] Defendant Patterson was cooperative in providing DNA buccal swabs.

Defendant Patterson expressed concern to Deputy Youngblood that his girlfriend not know the basis for his arrest. His girlfriend left the Checotah Police Department and Defendant Patterson was transported to jail.

---

1 See Government's Exh. No. 1.

2 See Government's Exh. No. 2.

Deputy Youngblood prepared a Probable Cause affidavit for Defendant Patterson's arrest.[3] Deputy Youngblood indicated on the affidavit that Defendant Patterson's race was "black." Deputy Youngblood stated that at no time did Defendant Patterson state or indicate that he was Native American, although he is an enrolled member of the Muscogee (Creek) Nation. On the statement he completed for Deputy Youngblood, Defendant Patterson set out that his race was "B" from the list of choices, indicating he was black.

Deputy Youngblood testified that he was not concerned about whether Defendant Patterson was Native American because he knew that a cross-deputization agreement existed between the Muscogee (Creek) Nation and the McIntosh County Sheriff's Office which allowed deputies to investigate and pursue crimes on Indian Country involving the Muscogee (Creek) Nation. He also stated that he did not believe that the areas on which he was investigating the sexual assault was Indian Country and did not believe that the Creek Nation maintained a reservation.

On cross-examination, Deputy Youngblood stated that he had prior knowledge of Defendant Patterson's identity and recognized him when he saw Defendant. The interview between Deputy Youngblood and Defendant Patterson was not recorded and lasted

---

[3] See Government's Exh. No. 3.

4

approximately thirty minutes. During the interview, Deputy Youngblood told Defendant Patterson that he needed to talk with him about the "incident that occurred." Defendant Patterson at first denied the sexual encounter with the victim. Deputy Youngblood told Defendant that he would have to continue the investigation because the victim stated otherwise. Deputy Youngblood falsely told Defendant that they had a camera showing the victim getting into Defendant's car. Defendant Patterson then admitted to picking the victim up, stating he never should have let her into the car. He also admitted to the sexual encounter.

Deputy Youngblood stated that he was aware of the case of Murphy v. Royal[4] as it was brought up during his academy training when discussing jurisdiction on Indian Country. But he stated that he was not told to "watch out for it." Deputy Youngblood was also aware of the cross-deputization agreement but was not aware that the agreement required that the Muscogee (Creek) Nation issue a special law enforcement commission in writing upon application of the law enforcement agency to the officers of the agency. The

---

4 875 F.3d 896 (10th Cir. 2017). The Murphy decision determined that the reservation of the Creek Nation had not be disestablished and that crimes committed on such land constituted "Indian Country" as defined by federal law. As a result, the State of Oklahoma lacked jurisdiction to prosecute the defendant for a murder occurring on the reservation by a member of an Indian tribe and that the crime could only be prosecuted in federal court under the Major Crimes Act.

agreement requires that

> All Officers of the law enforcement Agencies which are or subsequently become parties to this Agreement shall not become automatically cross-deputized by virtue of the execution of this Agreement but must be commissioned on an individual basis, upon application by the Officer's employer Agency and approval of same by the Commissioning Agency.[5]

Deputy Youngblood testified that he did not have a commission card under the cross-deputization agreement.  In investigating this crime, he stated that he believed that he was on non-Indian land and he believed that he could investigate Indians and non-Indians under the cross-deputization agreement.

Defendant Patterson was charged in the District Court of the Eighteenth Judicial District, McIntosh County, Oklahoma with felony Rape in the Second Degree on July 2, 2019.[6]  On September 9, 2020, Defendant Patterson was named by the Grand Jury in this District in a single count Indictment.  Defendant was charged with Sexual Abuse of a Minor in Indian Country in violation of 18 U.S.C. §§ 1151, 1153, 2243(a), and 2246(2)(A).  The state case was voluntarily dismissed by the State of Oklahoma on September 23,

---

[5] See Intergovernmental Cross-Deputization Agreement Between the United States, The Muscogee (Creek) Nation, and Political Subdivisions of the State of Oklahoma, Exh. No. 1 to Government's Response to Defendant's Motion to Suppress Evidence (Docket Entry #37).

[6] The Court takes judicial notice of the case of State of Oklahoma v. Demarco Latrel Patterson, CF-2019-0168.

6

2020 based upon the United States Supreme Court's ruling in McGirt v. Oklahoma, 140 S.Ct. 2452 (2020).

Through his Motion, Defendant challenges the jurisdiction of Deputy Youngblood and the McIntosh County Sheriff's Office to collect evidence from Defendant in connection with the alleged sexual assault, including physical evidence taken from his person and his statement to Deputy Youngblood. Defendant also contends his warrantless arrest was invalid because Deputy Youngblood lacked the jurisdiction to go upon Indian Country and to arrest Defendant since he is a tribal member of the Muscogee (Creek) Nation.

In the post-McGirt world, some jurisdictional certainties are apparent. In McGirt, the Supreme Court held that Oklahoma lacked jurisdiction to prosecute the criminal defendant in that case because the he was Native American and committed his crime within the boundaries of the Muscogee (Creek) Nation Reservation, a reservation that the McGirt Court determined was "Indian country" for purposes of the Major Crimes Act, 18 U.S.C. § 1153(a), because Congress never disestablished the reservation. McGirt, 140 S. Ct. at 2459-60, 2474.

In this case, Defendant Patterson allegedly committed the sexual assault within the Muscogee (Creek) Nation Reservation and

he is an enrolled tribal member of that same Nation. Consequently, under McGirt, the state authorities lacked the requisite jurisdiction to arrest and prosecute Defendant Patterson for the crime originally charged that clearly falls within the enumerated offenses encompassed by the Major Crimes Act.

Generally, an officer who acts outside of his jurisdiction in order to effectuate a warrantless arrest violates the Fourth Amendment to the United States Constitution. Ross v. Neff, 905 F.2d 1349, 1353-54 (10th Cir. 1990). The arrest is analogous to a warrantless arrest without probable cause and, absent exigent circumstances, is presumptively unreasonable. Id. at 1354 (citations omitted). The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," but "contains no provision expressly precluding the use of evidence obtained in violation of its commands." Herring v. U.S., 555 U.S. 135, 139 (2009) quoting Arizona v. Evans, 514 U.S. 1, 10 (1995). Supreme Court precedent, however, has established an exclusionary rule which "forbids the use of improperly obtained evidence at trial" in order to "safeguard Fourth Amendment rights generally through its deterrent effect." Id. at 139-140 quoting United States v. Calandra, 414 U.S. 338, 348 (1974).

The exclusionary rule does not apply in every circumstance where a Fourth Amendment violation is found. "When the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. . . . But when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful, . . . , the ' "deterrence rationale loses much of its force,"' and exclusion cannot 'pay its way,'" Davis v. United States, 564 U.S. 229, 238 (2011) quoting United States v. Leon, 468 U.S. 897, 919, 908, n. 6 (quoting United States v. Peltier, 422 U.S. 531, 539 (1975)).

The Government has not presented nor has this Court independently identified any Tenth Circuit authority which applies the good faith exception to the exclusionary rule to the actions of an officer acting outside of his jurisdiction in violation of **federal** law in making a warrantless arrest. Numerous cases have found that a violation of **state** law in exercising an officer's jurisdiction may or may not rise to the level of a Fourth Amendment constitutional violation. *See e.g.* United States v. Jones, 701 F.3d 1300, 1309-10 (10th Cir. 2012); United States v. Gonzalez, 535 F.3d 1174, 1182 (10th Cir. 2008); United States v. Mikulski, 317 F.3d 1228, 1231-32 (10th Cir. 2003); United States v. Green,

9

178 F.3d 1099, 1105 (10th Cir. 1999).  The Ross case, albeit a civil action based in an alleged violation of 42 U.S.C. § 1983, remains the unequivocal authority for an officer acting outside of his jurisdiction on tribal land and the constitutional violation it engenders.7  The Tenth Circuit subsequently summarized the Fourth Amendment's requirements for a warrantless arrest – (1) that the arresting officer have probable cause to believe that the person to be arrested has committed a crime and (2) that the arresting officer make the arrest within their jurisdiction or under exigent circumstances.  Green, 178 F.3d at 1107.  Clearly, the second requirement is lacking and no further exception has been specifically recognized.

This conclusion should not be mistaken to suggest that Deputy Youngblood acted nefariously or with ill motives as Defendant intimates.  Because of long-standing precedent and practice, he had a good faith belief that he was acting within his jurisdiction.  He also had no reason to believe that he was on Indian Country at the time of Defendant's warrantless arrest.  While he had been informed of the existence of a cross-deputization agreement

---

7 The Court should note that Ross carved out an exception to the stated violation of the Fourth Amendment by an officer acting outside of his jurisdiction on Indian Country for an arrest performed under "exigent circumstances." Ross, 905 F.2d at 1354.  In this case, however, the Government has presented no evidence of exigent circumstances.

10

between his agency and the Muscogee (Creek) Nation, no evidence suggests that he knew or had reason to know that the McIntosh County Sheriff's Office was not in compliance with the agreement by obtaining a commission in writing from the Muscogee (Creek) Nation authorities for each of its officers. This Court also rejects Defendant's arguments that Deputy Youngblood should have known he was acting outside of his jurisdiction because of the Murphy decision from the Tenth Circuit which had been issued before Defendant Patterson's arrest. The decision was not final as the Tenth Circuit had stayed the entry of the mandate until such time as the United States Supreme Court considered and decided any petition for certiorari which might have been filed.[8] Defendant's repeated characterization of law enforcement actions as a "flagrant disregard of jurisdictional boundaries" is simply not supported by the evidence and ignores the precedent by which all participants in the legal process had heretofore believed to be controlling. Nevertheless, this Court concludes that Deputy Patterson acted outside of his jurisdiction established by federal law in violation of the Fourth Amendment and no exception has been recognized for good faith to rescue the warrantless arrest.[9]

---

8 *See* Docket Entry No. 44.

9 The Government identifies three cases in its briefing which recognizes "good faith mistakes" which do not amount to constitutional violations. All three,

11

The analysis does not end with this finding as each piece of evidence derived from the investigation must be examined for its admissibility. In order to obtain the buccal swabs of Defendant Patterson's DNA, Deputy Youngblood executed a search warrant issued by an independent magistrate on June 27, 2019 before he was arrested. Leon and its progeny clearly recognize a good faith exception for Deputy Youngblood's actions in executing the search warrant to obtain the swabs. Leon, 468 U.S. at 918-19, 926; Herring, 555 U.S. at 145-46. Even if the court issuing the warrant lacks jurisdiction to do so, the actions of the executing officer determines the applicability of the Leon good faith exception to the exclusionary rule. United States v. Baker, 894 F.2d 1144, 1148 (10th Cir. 1990)(per curiam). "[E]vidence obtained through an improper search will be excluded only if, under the objective circumstances presented to the officer in question, 'a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" Id.

In this instance, Deputy Youngblood had no reason to believe

---

however, are distinguishable (outside of the fact that they do not emanate from the Tenth Circuit or United States Supreme Court). Engleman v. Deputy Murray, 546 F.3d 944 (8th Cir. 2008) involves the execution of a warrant which necessarily includes the insulation of an independent magistrate. The jurisdictional actions in Pasiewicz v. Lake Cty. Forest Preserve Dist., 270 F.3d 520 (7th Cir. 2001) entailed a violation of state not federal law. Nunn v. State, 121 So. 3d 566 (Fla. Dist. Ct. App. 2013) cert. denied, 574 U.S. 848 (2014) concerned "investigatory acts" outside of the officer's jurisdiction under a Florida state law not federal law.

the court issuing the warrant lacked jurisdiction to do so or that his search was constitutionally violative. His actions in executing the warrant were objectively reasonable and done in good faith. Consequently, the evidence derived from the buccal swabs should not be suppressed.

Defendant Patterson also provided a confession to Deputy Youngblood. The evidence indicates that his appearance at the police station was entirely voluntary and arranged at his convenience. Most importantly, Defendant Patterson was not placed under arrest at any time prior to making his voluntary statement. "A consensual encounter is not a seizure for purposes of the Fourth Amendment." United States v. Spence, 397 F.3d 1280, 1282-83 (10th Cir. 2005). Defendant's confession in both oral and written form was itself voluntary and without coercion from Deputy Youngblood after the deputy took the additional step of informing Defendant of his rights under Miranda. The mere presence of Deputy Youngblood does not render the confession involuntary. United States v. Mendenhall, 446 U.S. 544, 555–56 (1980)("We also reject the argument that the only inference to be drawn from the fact that the respondent acted in a manner so contrary to her self-interest is that she was compelled to answer the agents' questions. It may happen that a person makes statements to law enforcement

13

officials that he later regrets, but the issue in such cases is not whether the statement was self-protective, but rather whether it was made voluntarily.")  Based upon the consensual nature of the encounter and the voluntariness of the statements made, Defendant Patterson's oral and written confessions are admissible.

Other items were also collected from Defendant Patterson as a part of Deputy Youngblood's investigation including one pair of white slippers, one black t-shirt, one red shorts, one black underwear, and one brown hat.  These items were collected after Defendant Patterson's arrest for which Deputy Youngblood lacked jurisdiction.  Because Defendant's arrest and seizure was unlawful, all evidence that is the fruit of the poisonous tree must be suppressed. *See* Wong Sun v. United States*,* 371 U.S. 471, 485 (1963).  To suppress evidence as fruit of the poisonous tree, a defendant must show a factual nexus between the illegality and the challenged evidence.  Id.  Ordinarily, the Government can avoid suppression of such evidence if it proves that the evidence does not suffer from the taint of the unlawful conduct. *See* United States v. Nava-Ramirez*,* 210 F.3d 1128, 1131 (10th Cir. 2000).  The Government does this by demonstrating that the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate

14

the taint of the unlawful conduct.  Wong Sun, 371 U.S. at 488.  It is impossible to separate the evidence on the booking sheet from the illegal arrest itself.  Further, the Government has not presented evidence suggesting inevitable or independent discovery of the collected evidence.  As a result, the evidence collected from Defendant's person at the time of his extra-jurisdictional arrest should also be suppressed.

IT IS THEREFORE THE RECOMMENDATION OF THIS COURT that Motion to Suppress Evidence filed by Defendant Demarco Latrel Patterson (Docket Entry #33) be **GRANTED**, in part, in that Defendant's arrest is found to be violative of the Fourth Amendment and the evidence collected after his arrest should be **SUPPRESSED**.

IT IS THE FURTHER RECOMMENDATION OF THIS COURT that the Motion be **DENIED** as it pertains to Defendant's pre-arrest voluntary confession and the buccal swabs collected pursuant to a search warrant issued by a magistrate.

The parties are given fourteen (14) days from the date of the service of these Findings and Recommendation to file any objections with a supporting brief.  Failure to object to the Findings and Recommendation within fourteen (14) days will preclude appellate review of the judgment of the District Court based on such findings.

15

IT IS SO ORDERED this 5th day of January, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE