IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. CR-20-71-RAW |
| | ) |
| DEMARCO LATREL PATTERSON, | ) |
| | ) |
| Defendant. | ) |

### ORDER

Before the court are the parties' Objections [Docket. Nos. 55 & 56] to Magistrate Judge West's Findings and Recommendation [Docket. No. 47] concerning Defendant Demarco Latrel Patterson's Motion to Suppress Evidence [Docket. No. 33].

Under 28 U.S.C. § 636(b)(1)(B), the district court may designate a Magistrate Judge to hear certain pretrial motions, including a motion to suppress evidence in a criminal case. *United States v. Orrego-Fernandez,* 78 F.3d 1497, 1501 (10th Cir. 1996). Pursuant to Federal Rule of Criminal Procedure 59(b)(3), the district court must consider any objection de novo, and "may accept, reject, or modify the objection, receive further evidence, or resubmit the matter to the magistrate judge with instructions." An additional hearing is not, however, required. A district court is required to make a de novo determination, not to hold a de novo hearing. *United States v. Watkins,* 760 F.3d 1271, 1284 (11th Cir. 2014) (quoting *United States v. Raddatz,* 447 U.S. 667, 674 (1980)). The court has reviewed the written transcript of the evidentiary hearing [Docket No. 48].

BACKGROUND

In June 2019, Matt Youngblood, a Deputy with the McIntosh County Sheriff's Office, began investigating an alleged sexual encounter between Defendant and a fourteen-year-old girl. On July 1, 2019, Deputy Youngblood encountered Defendant's girlfriend at an apartment complex in which Defendant was believed to reside. Deputy Youngblood told the girlfriend that he wanted to speak with Defendant, and the girlfriend indicated she would pass that information along to Defendant. Later that day, Defendant contacted the Checotah Police Department and agreed to meet Deputy Youngblood there. During that meeting, Deputy Youngblood read to Defendant his *Miranda* rights, although Defendant was not under arrest, and Defendant agreed to speak with Deputy Youngblood. Deputy Youngblood then interviewed Defendant, who admitted to engaging in sexual acts consistent with those alleged by the fourteen-year-old girl, and he provided a written statement describing aspects of his encounter with the girl. Thereafter, Deputy Youngblood informed Defendant that he had a search warrant for Defendant's DNA, which Defendant provided in the form of a buccal swab. Deputy Youngblood then placed Defendant under arrest and transported him to jail. In September 2020, the Government filed an Indictment against Defendant accusing him of committing one count of Sexual Abuse of a Minor in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, 2243(a), and 2246(2)(A) [Docket No. 2].

Defendant's motion to suppress seeks exclusion of four categories of evidence, citing the Fourth Amendment as the basis for the exclusions [Docket No. 33, at 1–3]. First, Defendant requests exclusion of "[a]ll evidence, including statements made by Defendant . . . obtained or derived . . . from the interrogation of [Defendant] by Deputy Matthew Youngblood . . . who was acting outside his jurisdictional authority as a state law enforcement officer." [*Id.* at 1]. Second, Defendant asks the court to exclude "[a]ll evidence obtained or derived from the . . . illegal,

warrantless arrest of [Defendant]" because Deputy Youngblood was acting beyond his jurisdictional authority [*Id.* at 2]. Third, Defendant argues that the court should exclude all evidence obtained from the issuance of a search warrant—specifically, DNA swabs—because the state court that issued it lacked subject matter jurisdiction over the case [*Id.*]. Finally, Defendant seeks exclusion of evidence derived from his subsequent prosecution in the Oklahoma state courts, which has since been vacated, on the grounds that the state court lacked jurisdiction to conduct those proceedings [*Id.* at 2–3].

The Magistrate Judge's Findings and Recommendation concluded that Deputy Youngblood acted entirely in good faith in conducting his investigation while believing that he had jurisdiction to investigate the alleged crime and arrest Defendant [Docket No. 47, at 10–13]. However, the Magistrate Judge determined that the good faith exception to the exclusionary rule should apply only to the DNA evidence collected pursuant to a search warrant, but not to the evidence collected following Defendant's warrantless arrest [*Id.* at 7–10, 12–13]. The Magistrate Judge also found that Defendant engaged in a consensual encounter with Deputy Youngblood at the Checotah Police Department and also briefly addressed the voluntariness of Defendant's statements during that encounter [*Id.* at 13–14]. Finally, the Magistrate Judge concluded that the evidence collected following Defendant's arrest was fruit of the poisonous tree and should be excluded [*Id.* at 14–15].

## ANALYSIS

The court must begin this Order with some housekeeping made necessary by matters Defendant raised in his Objections.[1]  Specifically, Defendant, for the very first time in this case, asserted that his confession to Deputy Matt Youngblood was involuntary and should be suppressed on that basis [Docket No. 56, at 23–31].  This is an argument under the Fifth Amendment, not the Fourth Amendment, which is the basis of Defendant's motion.  Additionally, Defendant did not raise this argument during the evidentiary hearing as an additional basis for exclusion of his statements.  Defendant further raised, for the first time, an objection to the admission of his written statement to Deputy Youngblood on the basis that it is more prejudicial than probative under Federal Rule of Evidence 403 [*Id.* at 31–34].  Finally, although Defendant raised the matter in his initial motion, the Magistrate Judge did not address Defendant's brief contention that evidence of his prior state case should be excluded because Oklahoma lacked jurisdiction to charge him with the offenses [Docket No. 33, at 2–3, 10–11].

The court declines to address these arguments.  As to Defendant's objections regarding his statements, both oral and written, they were not properly raised in Defendant's initial motion and, as such, were not referred to the Magistrate Judge for consideration.  It is improper for Defendant to make those arguments for the first time in his objections to the Magistrate Judge's Findings and Recommendation.  *See United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed

---

[1] The court notes here that Defendant's objections significantly exceed the maximum length permitted for such filings. The Local Criminal Rules of this District do not provide a maximum length for briefs, but they adopt the Local Civil Rules "[w]hen appropriate."  LCrR 1.2.  The Local Civil Rules allow for a maximum of twenty-five pages without leave of court.  LCvR 7.1(c).  Defendant's objections are thirty-four pages long [Docket No. 56].  Ultimately, this issue is rendered moot by the fact that Defendant's excess pages raise arguments the court does not consider.  The court also notes that Defendant improperly filed a reply brief regarding his motion to suppress evidence [Docket No. 39]; the Local Criminal Rules do not permit the filing of reply briefs without leave of court.  *See* LCrR 12.1(e) (providing deadlines for the filing of motions and responses, but not replies).

waived."); *United States v. Mendoza-Alarcon*, --- Fed. Appx. ---, 2020 WL 7066329, at *5 (10th Cir. Dec. 3, 2020) (concluding that § 2255 petitioner waived additional theory regarding ineffective assistance of counsel claim where he did not assert it before magistrate judge); *United States v. Ruiz*, CIV No. 19-0976 JCH/KBM, 2020 WL 6482693, at *7 (D.N.M. Nov. 4, 2020) (holding that new theory supporting § 2255 petitioner's claim of ineffective assistance of counsel was waived because he did not raise it until objections to magistrate judge's recommendation). The court recognizes that the Magistrate Judge's Findings and Recommendation *very* briefly addressed the voluntariness of Defendant's statements, but did so in the context of examining whether Defendant engaged in a consensual encounter with Deputy Youngblood for the purposes of exclusion under the Fourth Amendment [Docket No. 47, at 13–14]. The court does not believe this makes Defendant's objections an appropriate vehicle to litigate, for the first time, his extensive Fifth Amendment voluntariness arguments. Additionally, Defendant's arguments concerning both his written statement being inadmissible under Federal Rule of Evidence 403 and his effort to seek exclusion of evidence pertaining to his prior convictions are properly raised in motions in limine, not a motion to suppress evidence.

This leaves the court with only one dispute it must resolve: Whether it should adopt the Magistrate Judge's recommendations concerning the good faith exception to the exclusionary rule.

I.   *McGirt* and Jurisdiction

In July 2020, the United States Supreme Court issued its ruling in *McGirt v. Oklahoma*, holding that Congress did not disestablish the Muscogee (Creek) Nation Reservation, which was created prior to Oklahoma's statehood. --- U.S. ---, 140 S. Ct. 2452, 2482 (2020). The most visible short-term consequence of *McGirt* is the vacatur of state court criminal convictions for Native American individuals whose crimes were committed within the lands now understood to be part

5

of the Muscogee (Creek) Nation Reservation. The Major Crimes Act gives the federal government exclusive jurisdiction over certain crimes committed by Native Americans within "Indian Country"—which includes the Muscogee (Creek) Nation Reservation—and state courts may not conduct proceedings concerning such crimes. 18 U.S.C. § 1153; *McGirt*, 140 S. Ct. at 2478. This is one example of such a case.

In light of the *McGirt* decision, there is no doubt that the state court lacked jurisdiction to issue the search warrant in this case and, in the absence of a properly effectuated cross-deputization agreement, that Deputy Youngblood lacked jurisdictional authority to arrest Defendant. There was, indeed, a cross-deputization agreement between Oklahoma's law enforcement agencies and the Muscogee (Creek) Nation [*See* Docket No. 37-1]. However, that agreement explicitly stated that officers of Oklahoma agencies did not automatically receive cross-deputization and that they must receive their commissions on an individual basis, by written application of their employing agency [*Id.* at 6]. The evidence shows that Deputy Youngblood had not been cross-deputized in the manner prescribed by the agreement. The question at issue is whether these jurisdictional deficiencies require exclusion of the evidence Deputy Youngblood obtained during the course of his investigation.

    **II.**    **Good Faith Exception to the Exclusionary Rule**

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Courts have adopted a rule to exclude evidence from use in criminal trials when that evidence is seized in violation of the Fourth Amendment. *Herring v. United States*, 555 U.S. 135, 139 (2009). This rule is intended to safeguard Fourth Amendment rights through deterrence of improper conduct. *Id.* But courts have also ruled that where exclusion

would not serve the ends of deterrence, an exception to the rule may apply. *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984). "Where suppression [of the evidence] fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.' " *Davis v. United States*, 564 U.S. 229, 237 (2011) (quoting *United States v. Janus*, 428 U.S. 433, 454 (1976)).

As a result, courts have adopted the good faith exception to the exclusionary rule. Where law enforcement officers act in good faith reliance on their belief that their actions do not violate the Fourth Amendment, the exclusionary rule loses its value as a deterrent and thus will not apply. *See id.* at 238–39 (exploring history of exclusionary rule and subsequent development of good faith exception). Put simply, "the exclusionary rule 'cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity.' " *United States v. McCane*, 573 F.3d 1037, 1042 (10th Cir. 2009) (quoting *Leon*, 468 U.S. at 919).

    a.    **Good Faith Belief**

The court agrees with the Magistrate Judge's findings that Deputy Youngblood acted entirely in good faith when he believed he had the authority to investigate, arrest, and collect evidence from Defendant [Docket No. 47, at 10–11]. Defendant's claims to the contrary are wholly without merit; particularly his assertions that McIntosh County and others "chose to make it a practice to ignore the State Constitution for years," that Deputy Youngblood "callous[ly]" ignored the jurisdictional bounds of Indian Country, and that Deputy Youngblood was "willful[ly] and deliberate[ly]" ignorant of the law [Docket No. 56, at 19–22].

The court cannot close its eyes and pretend the last century of state court prosecutions did not happen. As the Chief Justice noted in his dissent to the *McGirt* holding, Oklahoma "maintained unquestioned jurisdiction for more than 100 years" over the area now understood to be part of the

Muscogee (Creek) Nation Reservation.[2]  *McGirt*, 140 S. Ct. at 2485 (Roberts, C.J., dissenting). The Chief Justice's dissent discussed cases from early in Oklahoma's statehood in which it went unquestioned that the state had jurisdiction to try Native Americans for crimes on this land.  *Id.* at 2496–97 (citing, *e.g., Jones v. State*, 107 P. 738 (1910) (holding that defendant originally charged under federal laws prior to Oklahoma's founding was entitled to be tried under those same laws even though Oklahoma's state court conducted the proceedings)).

Put bluntly, Defendant asks the court to declare that Deputy Youngblood acted in willful ignorance of the law even though the State of Oklahoma has, for the past century, investigated, arrested, prosecuted, and convicted Native Americans for crimes on the lands in question.  Deputy Youngblood certainly has every right to rely on the regular and consistent practices of not just his own agency, or even other agencies, but the practices of courts throughout the region in exercising jurisdiction in the form of search warrants, arrest warrants, and criminal proceedings.  To hold that Deputy Youngblood was unreasonable in relying on that history is no different than penalizing an officer who relies in good faith on the incorrect findings of a neutral magistrate with respect to a warrant.  *See Leon*, 468 U.S. at 921 ("In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient . . . . Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.").

Deputy Youngblood is not an attorney.  Indeed, even nine of this country's pre-eminent jurists were sharply divided on the question of whether Congress disestablished the Muscogee (Creek) Nation Reservation.  *See generally, McGirt*, 140 S. Ct. 2452 (holding by a 5–4 decision that Congress did not disestablish the reservation).  Notably, the Tenth Circuit's Chief Judge

---

[2] The majority opinion similarly recognized the practice of Oklahoma exercising authority over major crimes in these lands.  *McGirt*, 140 S. Ct. at 2470 (Gorsuch, J., majority).

8

Tymkovich, who presided over the panel for *Murphy v. Royal*—a case raising the same issues as *McGirt*—expressed some belief that the reservation may have been *de facto* disestablished and that the Supreme Court should consider reviewing the case on that basis. 875 F.3d 896, 967–68 (10th Cir. 2017) (Tymkovich, C.J., concurring in denial of rehearing en banc).  It is absurd to say that Deputy Youngblood, his superiors, or his trainers, should have known better than four of this nation's Supreme Court Justices, particularly where they had a century of precedent and practice buttressing their belief that they had jurisdiction to investigate and perform arrests of Native Americans on these lands.  Deputy Youngblood acted with an objectively reasonable belief that he had the authority to investigate the alleged crime at issue and arrest Defendant once he determined he had probable cause to do so. *See Heien v. North Carolina*, 574 U.S. 54, 67–68 (2014) (holding that officer made an objectively reasonable mistake of law with respect to a vague statute concerning brake signals).  This conclusion is further strengthened by the fact that a neutral state magistrate issued a search warrant for Defendant's DNA, which would only have confirmed Deputy Youngblood's belief that he had jurisdiction to investigate Defendant and ultimately arrest him if he had probable cause.

      The court recognizes Defendant's assertion that the Tenth Circuit's decision in *Murphy v. Royal*, issued first in August 2017 before being superseded by an opinion released in November 2017, should have put Deputy Youngblood and other law enforcement officers on notice regarding the state of the law and the status of the lands.  This argument holds no weight.  The Tenth Circuit stayed issuance of its mandate pending an appeal to the Supreme Court.  *See Murphy v. Royal*, Case Nos. 07-7068 & 15-7041, Document No. 01019902688 (10th Cir. Nov. 16, 2017).  As a result, that decision lacked the force of law until the Supreme Court affirmed it in July 2020. *Sharp v. Murphy*, 140 S. Ct. 2412 (2020) (*per curiam*).  The court will not fault Deputy Youngblood, or

9

any member of the McIntosh County Sheriff's Office, for not adhering to a court decision that had not yet taken effect and could have, at any moment, been reversed by the Supreme Court.

      b.      **Good Faith Exception and the Arrest**

Initially, the court notes that there is no meaningful dispute over whether Tenth Circuit precedent establishes that an officer who performs a warrantless arrest outside of their jurisdiction does so in violation of the Fourth Amendment. *See United States v. Green*, 178 F.3d 1099, 1107 (10th Cir. 1999) ("In the context of warrantless arrests, the Fourth Amendment requires only that the arresting officers have probable cause to believe that the person to be arrested has committed a crime and that the arresting officers make the arrest within their jurisdiction or under exigent circumstances." (internal citations omitted)). Thus, Deputy Youngblood's arrest violated Defendant's Fourth Amendment rights. Having determined that Deputy Youngblood acted in good faith belief that he had jurisdiction over the crime in question, the court now turns to the next question: Whether the evidence obtained as a result of the arrest should be excluded.

The Magistrate Judge determined that, although Deputy Youngblood acted in good faith, that did not prevent the application of the exclusionary rule to evidence derived from that arrest [Docket No. 47, at 9–11]. The Magistrate Judge believed that the absence of Tenth Circuit precedent holding that an arrest made in violation of federal jurisdictional law came within the umbrella of the good faith exception compelled that decision [*Id.* at 11]. The Magistrate Judge's recommendation is well-reasoned, but the court disagrees.

Defendant and the Magistrate Judge cite *Ross v. Neff*, a Tenth Circuit decision, as part of their analyses of this issue. In examining *Ross*, the court believes its rationale militates in favor of applying the good faith exception. That case involved a Section 1983 claim against a county deputy for illegal arrest and excessive force. *Ross v. Neff*, 905 F.2d 1349, 1351 (10th Cir. 1990).

The deputy arrested a Cherokee plaintiff at a baseball field located on Cherokee Indian Tribal Trust Land. *Id.* The local sheriff's office received a call asking for police to come to the field, and the deputy responded. *Id.* at 1351–52. Once there, the deputy shot the plaintiff, claiming that he resisted arrest, and then arrested the plaintiff. *Id.* at 1352.

The Tenth Circuit recognized that the baseball field was Indian Country and that the deputy had no jurisdiction to arrest a Native American on that land. *Id.* In doing so, however, the Tenth Circuit noted the deputy could not reasonably have known that his actions violated the Fourth Amendment. *Id.* at 1354. The state of the law at that time could be understood to allow state law enforcement activities on Tribal Trust Lands where federal and tribal authorities had apparently abdicated all law enforcement responsibilities on the land. *Id.* As a result, the Tenth Circuit held the deputy was entitled to qualified immunity from the Section 1983 claim regarding the illegal arrest. *Id.*

While qualified immunity is a different rule from the good faith exception, it seems reasonable to think that where an officer would be entitled to qualified immunity, the good faith exception would also apply to any evidence they might have seized in violation of the Fourth Amendment. The state of the law at the time Deputy Youngblood arrested Defendant was that McIntosh County deputies had the authority to investigate crimes like those alleged in this case. The court is reluctant to exclude evidence, thus penalizing the Government, the alleged victim, and society at large, when Deputy Youngblood would likely receive qualified immunity in the event of a Section 1983 lawsuit alleging an illegal arrest under *Ross*.

Exclusion of evidence obtained in violation of the Fourth Amendment is a "bitter pill" that society must swallow "only as a 'last resort.' " *Davis*, 564 U.S. at 237 (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). The benefits of deterrence offered by suppression must

outweigh the costs it places on society. *Id.* The court finds that suppressing the evidence derived from Defendant's arrest would have no appreciable deterrent effect. Deputy Youngblood acted in an objectively reasonable manner, and "excluding the evidence will not further the ends of the exclusionary rule in any appreciable way . . . . Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty." *Leon*, 468 U.S. at 920. Recognizing the state of the law as it existed when Deputy Youngblood arrested Defendant, the only thing suppression would deter is an officer in Deputy Youngblood's position from doing their job. Deputy Youngblood could not, realistically, have declined to pursue his investigation and arrest Defendant without jeopardizing his employment. That being the case, the court finds exclusion of the evidence is inappropriate and that the good faith exception applies. *See, e.g., United States v. Wilson*, 528 F. Supp. 1129, 1132 (S.D. Fl. 1982) (holding that officers acted in good faith belief that they were within their territorial jurisdiction in making arrests and that exclusion of evidence would not be appropriate).

In making this decision, the court expresses no opinion on the impact of the cross-deputization agreement and Deputy Youngblood's lack of a commission under that agreement. Whether Deputy Youngblood was, or was not, cross-deputized at the time of this investigation bears no weight in this case because Deputy Youngblood reasonably believed in good faith that the crime occurred on lands not within Indian Country. But there is no doubt that *McGirt* changed the state of the law, and law enforcement agencies must adapt to those changes moving forward.

      **c.**      **Good Faith Exception and the Search Warrant**

Defendant disputes the Magistrate Judge's determination that the good faith exception applies to the search warrant for Defendant's DNA on the basis that the court lacked jurisdiction to issue that search warrant and Deputy Youngblood did not act in good faith reliance on that

warrant [Docket No. 56, at 18–22]. The court's earlier analysis thoroughly addresses the question of whether Deputy Youngblood could, in good faith, believe that he—and by extension, the Oklahoma courts—had jurisdiction over the crime alleged to have happened. He could. Indeed, he could not reasonably have believed otherwise. Therefore, the good faith exception to the exclusionary rule applies to the DNA collection. *See Leon*, 468 U.S. at 921 (holding that good faith exception applies to facially valid warrants, even where warrant was improperly issued, noting "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law. Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." (internal quotation marks and citation omitted)). As such, the court adopts the Magistrate Judge's Fourth Amendment analysis with respect to the search warrant and subsequent DNA collection [Docket No. 47, at 12–13].

### III. Statements Made During Consensual Encounter

Defendant does not object to the Magistrate Judge's finding that Defendant's meeting with Deputy Youngblood at the Checotah Police Department was a consensual encounter under the Fourth Amendment. Instead, he argues that Defendant's statements during that interview were coerced in some manner and attacks Deputy Youngblood's credibility regarding what took place during the interview [Docket No. 56, at 23–34]. As discussed above, Defendant did not raise this argument in his original motion that the court referred to the Magistrate Judge. His raising it for the first time in his objections is improper, and the court will not consider it.

The court has reviewed the Magistrate Judge's Findings and Recommendation with respect to Defendant's statements to Deputy Youngblood and agrees with the determination that the interview was part of a consensual encounter that does not constitute a seizure under the Fourth

Amendment [Docket No. 47, at 13 (quoting *United States v. Spence*, 397 F.3d 1280, 1282–83 (10th Cir. 2005)]. As such, the court will not exclude the statements as being the product of a Fourth Amendment violation.

## CONCLUSION

Accordingly, the United States Magistrate Judge's Findings and Recommendation [Docket No. 47] are hereby affirmed and adopted, except with respect to the legal conclusion that the good faith exception to the exclusionary rule does not apply to Deputy Youngblood's arrest of Defendant and the evidence obtained subsequent to the arrest. As such, Defendant's Motion to Suppress [Docket No. 33] is hereby denied.

**IT IS SO ORDERED** this 18th day of February, 2021.

*/s/ Ronald A. White*
Ronald A. White
United States District Judge
Eastern District of Oklahoma